# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                 Respondent,<br><br>        v.<br><br>MATTHEW NICHOLAS MCGOWAN,<br><br>                 Appellant. | No. 81076-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — McGowan appeals his conviction for first degree murder. He argues the trial court erred in admitting out-of-court statements of a non-testifying declarant in violation of the confrontation clause. We affirm his conviction but remand for resentencing in light of State v. Blake, 197 Wn.2d. 170, 195, 481 P.3d 521, 534 (2021).

## FACTS

On January 4, 2019, police responded to a report that Michael Boone's body had been found at the Evergreen Cemetery, in Everett. He had been tied to a tree with most of his clothes removed. He died of hypothermia.

The police investigation led them to three persons of interest: Darron Wiedman, Donita Burkley, and Matt McGowan. Wiedman eventually agreed to testify, and relayed the following series of events leading to Boone's death.

On December 31, 2018 to January 1, 2019, Wiedman and Burkley were homeless and sharing an encampment in Everett. That night, the pair were

"hanging out" with some acquaintances, including McGowan. The group discussed a plan to rob someone in order to get a room for the night because it was cold outside.

At some point, Boone approached Wiedman hoping to purchase sex with Burkley. Wiedman, Burkley, and McGowan then discussed a plan to have Boone purchase a room under the guise of having sex with Burkley, without actually allowing him to have sex with her. They believed that Boone would be unable to do anything once he had purchased the room because he would be outnumbered by Wiedman and McGowan.

The group then met back up with Boone in order to get him to an automated teller machine (ATM) to make sure he had enough money for the room. But, they discovered that Boone had only six dollars in his account. Burkley and McGowan indicated that they had seen Boone with a roll of money earlier. So, the group discussed bringing Boone to a "spot"—somewhere out of the way where police or passersby would not be able to see what they were doing. The three agreed that they would not hurt Boone, and that the robbery could be accomplished through intimidation.

At that time, Wiedman remembered some electronics that he had left plugged in to the back of a building. He told the rest of the group that he would meet them at a gazebo in the Evergreen cemetery in 20 minutes, after he collected the devices and dropped them off at his camp.

He then broke off from the group, collected his electronics, and went back to his camp. But, he did not proceed to the gazebo as promised. Instead, he stayed at his camp to talk on the phone with a girlfriend.

About fifteen minutes later, Burkley returned to the campsite. Wiedman described her as "hysterical . . . like she'd seen a ghost." He asked her what happened. He claims that she told him that McGowan had hit Boone over the head with a stick or board, and was strangling him so hard that by the time she got him to stop, she believed Boone was dead. He claims that she told him that she and McGowan then tied Boone to a tree, and he (Boone) said, "'I don't want to die tonight.'"

McGowan then returned to the tent carrying Boone's clothes. The three searched through the pockets for valuables and divided them amongst themselves. They did not find the roll of cash. Wiedman and McGowan then left together. Neither apparently returned to the cemetery to help Boone.

The State charged McGowan with first degree felony murder. In exchange for the testimony above, Wiedman was allowed to plead guilty to first degree robbery.

McGowan testified in his own defense. He admitted to being with Wiedman, Burkley, and Boone on the night of December 31 to January 1, 2019. He denied being part of a plan to rob Boone and claims that he left the group shortly after Weidman did because he felt uncomfortable.

McGowan moved pretrial to exclude Burkley's statements to Wiedman under the confrontation clause. The trial court denied the motion, finding the statements admissible because they were nontestimonial.

A jury found McGowan guilty as charged. McGowan then moved for a new trial. He again argued that the trial court had erred in admitting Burkley's statements to Wiedman. He argued that neither he nor the State had cited the correct legal standard, so the court had used an incorrect standard to determine whether Burkley's statements were testimonial. The trial court denied the motion for a new trial, finding it would have ruled to admit the statements under either standard.

McGowan appeals.

## DISCUSSION

McGowan argues that the trial court erred in admitting Burkley's out-of-court statements in violation of the confrontation clause.[1] He also argues that Blake, 197 Wn.2d. at 195, renders one of his prior convictions moot, such that he must be resentenced.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to confront witnesses against them. Whether the

---

[1] McGowan also assigns error to the trial court's determination that the statements constituted admissible hearsay. But, he does not provide any argument on the hearsay issue. Appellants are required to provide argument in support of the issues presented for review. RAP 10.3(a)(6). Failure to provide argument renders the issue undeserving of judicial consideration. See Holland v. City of Tacoma, 90 Wn. App. 533, 537-38, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). We do not consider the hearsay issue.

admission of an out-of-court statement by a nontestifying declarant violates this clause depends on whether the statement is testimonial. State v. Scanlan, 193 Wn.2d 753, 761, 445 P.3d 960 (2019), cert. denied, 140 S. Ct. 834, 205 L. Ed. 2d (2020). Only statements that are testimonial implicate the confrontation clause. State v. Burke, 196 Wn.2d 712, 725, 478 P.3d 1096 (2021).

A statement is testimonial if the primary purpose of the statement is to create an out-of-court substitute for trial testimony. Scanlan, 193 Wn.2d at 767. In determining whether a statement is testimonial, courts objectively evaluate the statements and actions of the parties to an encounter in light of the circumstances where the encounter occurred. See Burke, 196 Wn.2d at 726. The role of the person the declarant is speaking to is significant to determining the primary purpose of a statement. Id. at 727. Statements to police officers are significantly more likely to be testimonial than to others because police are principally charged with investigating crime. See Scanlan, 193 Wn.2d at 767; Burke, 196 Wn.2d at 728.

The State has the burden of showing a statement was not testimonial. State v. Koslowski, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009). We review confrontation clause challenges de novo. Burke, 196 Wn.2d at 725.

The statements here were not testimonial because Burkley's primary purpose was not to create an out-of-court substitute for trial testimony. It was to report to Wiedman that the robbery had gone awry. The statements happened shortly after a robbery that Burkley, McGowan, and Wiedman had planned. Nobody was supposed to be hurt during the robbery. Instead, McGowan had

5

severely injured their victim, and then he and Burkley left him tied to a tree. Burkley appeared "hysterical" and "like she had seen a ghost" when she arrived at Weidman's encampment. This prompted Wiedman to ask what had happened, prompting her statement in response.

McGowan argues that Burkley's statements to Wiedman were testimonial because their primary purpose was to blame McGowan for the assault and eventual death of Boone. He claims that Burkley and Wiedman conspired together to fabricate the statement and Burkley's version of events to absolve themselves of responsibility for Boone's death.[2]

McGowan's theory is speculative at best. First, Wiedman was a coconspirator, not a police officer, and was not principally charged with investigating crime. See Scanlan, 193 Wn.2d at 767 (statements to persons other than police officer less likely to be testimonial); see also State v. Whitaker, 133 Wn. App. 199, 226, 135 P.3d 923 (2006) (statements in furtherance of a conspiracy are not testimonial). And, the crime was still in progress, as evidenced by the fact that McGowan arrived shortly after with Boone's belongings and the three together went through them and took Boone's valuables. Nothing in the record suggests that anyone went to Boone's aid to untie him or sought medical assistance. McGowan's theory relies on Burkley believing that there would be a subsequent investigation and that Wiedman would cooperate with her attempted cover-up.

---

[2] A part of McGowan's theory is that Wiedman fabricated that Burkley made the statement at all. Whether a witness has testified truthfully is entirely for the jury to determine. State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). McGowan was free to challenge Weidman's credibility on cross-examination to aid the jury in that determination.

And, the plan would have been ultimately unsuccessful. Burkley's own statements implicated her because she admitted to helping to tie Boone up, which eventually caused his death. Nothing in the purported conversation addressed what anyone would say to police if an investigation did occur.

The primary purpose of Burkley's statement was not to create an out-of-court substitute for trial testimony and the statements are not testimonial. See Scanlan, 193 Wn.2d at 766. The statements do not implicate the confrontation clause. Burke, 196 Wn.2d at 725 (only testimonial statements implicate the confrontation clause). The trial court did not err in admitting the statements.

McGowan also argues that Blake, 197 Wn.2d. at 195, renders one of his prior convictions moot, such that he must be resentenced. The State does not object to remand for resentencing.

We affirm McGowan's conviction and remand for resentencing.

_Appelwick, J._

WE CONCUR:

_Coburn, J._          _Dwyer, J._